SOUTH CAROLINA CONTINENTAL TELEPHONE COMPANY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10212. Promulgated January 28, 1948.

*Milton E. Carter, Esq.*, for the petitioner.
*Gene W. Reardon, Esq.*, for the respondent.

168

OPINION.

TYSON, *Judge*: The first assignment of error presents the only remaining issue for our redetermination. The parties are in agreement as to the principles of law applicable to that issue, viz., that, generally, where an outstanding issue of bonds is retired for cash, even though the cash is obtained by the sale of a new issue of bonds, the premium paid upon the retirement and the unamortized discount and

expenses of the old bonds are deductible in the year of retirement,[1] but that where an outstanding issue of bonds is retired by an exchange or substitution of old bonds for new, those same items are deductible only through amortization over the life of the new bonds.[2]

The parties are in further agreement that the question herein narrows itself into one of whether the July 30, 1941, transactions carried out pursuant to the terms of the July 16, 1941, agreement constituted, in fact, (1) an exchange or substitution of petitioner's new bonds to the extent of the principal amount of $387,000 thereof for its old bonds thus retired and an issue of additional new bonds in the principal amount of $213,000 for cash, as contended by respondent, or (2) a purchase and retirement by petitioner of its outstanding old bonds from the proceeds of the sale of its new bonds, as contended by petitioner.

In *Great Western Power Co.* v. *Commissioner, supra,* the holders of the old bonds exercised *an option* to exchange them for new bonds at par, plus a cash premium, and the Court, after referring with approval to cases involving a retirement of bonds for cash, stated that "The question then is whether, upon an exchange of one obligation for another which is to be retired, the transaction is to be viewed as if the retirement were accomplished by the payment of cash," and held that the taxpayer had substituted a new obligation for the old, and that the unamortized expense of issuance of the old bonds and the expense of the exchange were both attributable to the issuance of the new bonds and accordingly were amortizable over the life of the new bonds. The principle of tax law decided in that case is controlling in the instant case if it be determined as an ultimate fact that the transactions here involved constituted an exchange of petitioner's old bonds for its new bonds.

In the instant case we have concluded and found as an ultimate fact that petitioner issued its new series B bonds in the principal amount of $387,000 in exchange or substitution for an equal principal amount of its then outstanding old series A bonds simultaneously canceled and retired. In our opinion the essential facts herein lead to such conclusion. It is true that the written agreement of the insurance company and petitioner dated July 16, 1941, uses numerous expressions which,

---

[1] *Helvering* v. *California Oregon Power Co.,* 75 Fed. (2d) 644; *Helvering* v. *Union Public Service Co.,* 75 Fed. (2d) 723; *Helvering* v. *Central States Electric Corporation,* 76 Fed. (2d) 1011; *Southern California Edison Co., Ltd.,* 4 T. C. 294; *Congress Square Hotel Co.,* 4 T. C. 775; *Illinois Power & Light Corporation,* 33 B. T. A. 1189; *American Gas & Electric Co.,* 33 B. T. A. 471 (see first issue, pertinent here, not involved on appeal 85 Fed. (2d) 527); *East Ninth Euclid Co.,* 26 B. T. A. 32; reaffirmed, 27 B. T. A. 1289; and T. D. 4603, XIV–2 C. B. 58.

[2] *Great Western Power Co.* v. *Commissioner,* 297 U. S. 543, affirming 79 Fed. (2d) 94. Also see T. D. 4603, *supra;* and *Virginia Electric & Power Co.* v. *Early* (Dist. Ct. Va.), 52 Fed. Supp. 835.

if given the emphasis contended for by petitioner, would seem to cloak the July 30, 1941, transactions as a sale of its new bonds for cash and a purchase of its old bonds with a portion of such cash proceeds. However, we may not ignore the fact that the indenture of mortgage is the basic instrument governing the legal inter-relationship existing between the old bonds and the new and also governing the construction to be placed on the July 16, 1941, agreement. That agreement specifically refers to and is bottomed on the indenture of mortgage and despite the use of words of purchase and sale in the agreement it specifically provides that "$387,000 principal amount of the Series B Bonds will be issued under Article Four of the Original Indenture against the cancellation and retirement of an equal principal amount of the said outstanding Series A Bonds and the remaining $213,000 principal amount of the Series B Bonds will be issued under Article Six of the Original Indenture against the deposit with the Trustee thereunder of $213,000 cash. The cash so deposited will be withdrawn by the company in accordance with the provisions of Section 6.02 of the Original Indenture," that is, for the purpose of redeeming outstanding bonds or for physical property additions. In short, the essence of the July 30, 1941, transactions was that upon the completion thereof petitioner was in the position of having cash made available through the sale of $213,000 principal amount of new series B bonds and of having exchanged or substituted $387,000 principal amount of new series B bonds for an equal principal amount of old series A bonds simultaneously canceled and retired. Furthermore, the indisputable facts are that, to the extent of $387,000 principal amount, the issuance of the new bonds was entirely dependent upon the simultaneous surrender of the outstanding old bonds; that the old and the new bonds were not independent obligations existing at the same time, but instead evidenced the same indebtedness between the same parties continuing without interruption, by virtue of the simultaneous exchange or substitution; and that the only material change effected as to such continuing indebtedness was in the rate of interest thereon, the date of maturity thereof, and the form of the bond representing the debt.

We hold that the premium paid and unamortized discount and expense upon the retirement of petitioner's first mortgage series A bonds in 1941 are not deductible in full in that year, but should be amortized annually over the life of the bonds issued in exchange for those retired. *Great Western Power Co.* v. *Commissioner, supra.*

On the first issue we sustain the respondent's determination.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

VAN FOSSAN and JOHNSON, *JJ.*, dissent,